THE GRATITUDE *v.* THE EUTAW.*

THE EUTAW *v.* THE GRATITUDE.*

(*District Court, E. D. Pennsylvania.* November 10, 1882.)

1. COLLISION—CROSSING COURSES—MANEUVER IN EXTREMIS—BURDEN OF PROOF.
    Where a tug-boat, running a course parallel with a steam-boat, signals her intention to cross the course of the latter, and while attempting to do so stops and backs immediately before a collision takes place, she must take the hazard of such departure from the ordinary rule of navigation, and, to escape liability, must show clearly an allegation that the steam-boat disregarded her signals and imperiled her own safety by continuing her former course at a negligent rate of speed.

2. PILOT, LICENSE OF—NEGLIGENCE.
    It is immaterial that the steam-boat was in charge of a pilot whose license had expired without renewal, he being of undoubted competency and long experience.

3. REPORT OF LOCAL STEAM-BOAT INSPECTORS—EFFECT OF.
    No weight can be given, in a judicial proceeding, to the decision of the board of steam-boat inspectors, made after an investigation conducted for their own purposes.

In Admiralty. Cross-libels to recover damages for injuries caused by a collision.

The facts were as follows:

About 9:30 o'clock A. M., September 6, 1881, the steam-boat Gratitude, being nearly opposite Cramp's ship-yard, was passing up the Delaware river at her usual speed, and in a line a little to the westward, or Philadelphia side, of the middle of the river. The tug-boat Eutaw, being in advance of the Gratitude, was proceeding on a parallel course to the eastward of the middle of the river. The Eutaw, desiring to run into pier No. 19, Philadelphia, by cross-

*Reported by Albert B. Guilbert, Esq., of the Philadelphia bar.

ing the bows of the Gratitude, blew one whistle, which was answered by one blast from the Gratitude, and thereupon the Eutaw starboarded her helm. When within a few yards of each other the Eutaw stopped and backed her engines, and immediately thereafter the Gratitude struck the Eutaw amidships, at a sharp angle. Both vessels were injured, and both filed libels. The Gratitude claimed that the collision was caused by the hazardous maneuver of the Eutaw in attempting to cross her bows, and afterwards stopping and backing. The Eutaw claimed that it was caused by the failure of the Gratitude to go to the right, as her answer had indicated she would do, and by her attempting to cross the bows of the Eutaw by continuing on her first course at a high rate of speed. It appeared that the pilot in charge of the Gratitude had allowed his license to expire without renewal, and that he had been a pilot for 30 years, and was of undoubted competency.

The government board of steam-boat inspectors at the port of Philadelphia investigated the facts and decided that the collision had been caused by negligence on the part of the Eutaw.

*Henry R. Edmunds,* for the Gratitude.

*J. W. Coulston,* for the Eutaw.

BUTLER, D. J. The two vessels were passing up stream, virtually on parallel courses, the Gratitude being to westward of the channel, and the Eutaw eastward, a short distance in advance, each at customary speed. As they thus ran, no danger of collision existed. The Eutaw, desiring to pass to the western side, signaled the Gratitude to run under her stern, turned westward, slackening her speed at the same time, and very soon after, if not immediately, reversing her engine. The Gratitude, in attempting to pass under her sterns, collided, and both vessels were injured. Each accuses the other of fault, and is here as libelant, claiming damages. The Gratitude charges the collision to the Eutaw's half-executed attempt to run across her bows, as described, alleging that the distance between the vessels was such as to forbid the attempt; but that after signaling her purpose, and entering upon it, she should have pressed on westward, in which event the collision might have been avoided, though the risk would have been great. The Eutaw, after stating the situation of the vessels as they passed up the stream, (much as her antagonist has,) her object in crossing, etc., replies to the charge of fault as follows:

"Upon receiving the answer of one whistle from the Gratitude, the wheel of the Eutaw was put to starboard, and the Eutaw began to move to port and towards the western shore. While the Eutaw was rounding to * * * the Gratitude, instead of going to the right, as her answer to the one whistle of the Eutaw indicated she would, and as she ought to have done, and as there was plenty of time and space to do, kept on at a high, dangerous, and unlaw-

ful rate of speed, and, without changing her course, attempted to cross the bows of the Eutaw. Seeing that a collision was imminent if the Gratitude continued on her course, the Eutaw, in answer to a hail from the master of the Gratitude to back, was stopped and backed immediately. After the Eutaw had begun to back there was nothing to prevent the Gratitude from avoiding collision; but instead of so doing the course of the Gratitude was suddenly changed, an attempt made to go under the Eutaw's stern, and there being insufficient space and time for such a maneuver the collision occurred."

The inherent improbability of this latter statement is such as to forbid its acceptance, in the absence of conclusive proof. Signaling her agreement to accept the Eutaw's proposition, and run eastward under her stern, why should the Gratitude "keep straight on, at a high rate of speed," and attempt to cross her bows, thus imperiling herself as well as the Eutaw? And then seeing that a collision was imminent, and hailing the Eutaw to back, seeing that she was backing, and that there was nothing then to prevent passing in front, why should she abandon her purpose so to pass, turn eastward and run into the Eutaw, in the foolish attempt to pass under her stern as she backed? To believe this, it is necessary to believe that the officers in charge of the Gratitude maliciously intended to run the Eutaw down, or that they were bereft of reason. That the evidence does not sustain this answer need hardly be stated. On the contrary, it shows very plainly that the Gratitude did not "keep on at a high rate of speed without changing her course," did not attempt to "cross the Eutaw's bows," did not "hail her to back,  *  *  *  and then, turning eastward, attempt to pass under her stern." Capt. Davis, a witness called by the Eutaw, says the Gratitude, after answering the signal, went eastward, though not as fast as he thought she should. With the tide against her stern it is probable she would obey her rudder tardily; but whether the witness' position was favorable to accurate observation in this respect may be doubted.

In my judgment the collision is attributable solely to the improper conduct of the Eutaw. When she resolved to change her course, and signaled the Gratitude, the position of the vessels was such as to render the execution of this maneuver dangerous and improper. The precise distance between them cannot be known. It is probable the Eutaw was nearly, if not quite, as far eastward of the Gratitude as she was in advance. While we do not know the exact distance, we do know that it could not be many lengths; and that while the maneuver might have been successfully executed, doubtless, had each vessel faithfully obeyed the signal, it was imprudent and improper.

The Eutaw's witness, Capt. Davis, in answer to the question, "After the Gratitude had replied to the Eutaw's whistle, was there time enough for her to have gone over to the eastward with the space between them?" says: "Well, if their wheel had been put hard over, the space was short; and, according to my views, if her wheel had been hard over, she might or ought to have gone clear. I would like to say something further about this. The Gratitude is very long and very swift, and, as I said before, it seems to me if the helm had been put hard over as soon as the signal was answered she could have cleared; but there is some doubt in my mind about it." This is predicated upon the supposition that the Eutaw had held her course westward. The witnesses from aboard the Gratitude express the same view, and further testify that their vessel was turned eastward immediately on receiving the Eutaw's signal,—the wheel being put hard a-port,—and that the engine was promptly reversed. Yet so near together were the vessels that before her headway was overcome, and before the Eutaw had more than got about and straightened on her course, they were in dangerous proximity. Had the Eutaw proceeded promptly westward, the collision, doubtless, would have been avoided, though serious danger must have been incurred. Her first fault was in attempting the hazardous experiment proposed, and her second, in taking alarm at the danger she had occasioned, when the maneuver was half executed, and backing, so as to render the successful execution of her order to the Gratitude impossible.

In porting her wheel, and reversing her engine, the Gratitude did all that was possible. Up to this time she had been running at full speed. I see nothing to censure, however, in this. The Eutaw had been doing the same, and such is the uniform custom of all similar vessels in traversing this part of the river. There was nothing in the respective situations of the Gratitude and Eutaw to require unusual care on the part of the former, or diminution of speed, until the signal indicating change of course was received. Nor does it appear that the execution of the Eutaw's order would have been facilitated by a lower degree of headway. Had she held to her purpose, as she should, after signaling the Gratitude, and entering upon it, the collision would, doubtless, have been avoided. Hesitating, with it half executed, and then backing, the collision would probably have occurred if the Gratitude's speed, at the time of signaling, had been less. It is not a sufficient answer to say that the Eutaw would not have hesitated and backed, under other circumstances, supposed. She should not have done so under those existing; and we

are not at liberty to guess at what she would have done if they had been different.

It is unimportant that the pilot in charge of the Gratitude had allowed his license to expire without renewal. His competency for the service is undoubted.

It is proper to say that no weight whatever has been attached to the action of the inspectors, whose report was put in evidence, and referred to on the argument. The rights of parties injured by collision cannot be affected by anything these gentlemen may do in the discharge of their official duties. They may be called as experts, to solve nautical problems, if competent for this service; in no other way can the court listen to what they may do or say respecting cases of collision.

A decree will be entered sustaining the Gratitude's libel, and dismissing the Eutaw's.